IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Renee Wooten, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 4:15-2119-RMG |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
|     Defendant. ) | |
| ) | |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on June 8, 2016, recommending that the Commissioner's decision be affirmed. (Dkt. No. 13). Plaintiff timely filed objections to the R & R, arguing that the R & R "undervalues and misrepresents" the opinions of Plaintiff's treating physician, Dr. Steude, and the Magistrate Judge refused to consider records submitted for the first time at the time of the appeal to the District Court. (Dkt. No. 15). The Commissioner has filed a reply urging the Court to adopt the R & R and to affirm the administrative decision. (Dkt. No. 17).

After a careful review of the full record in this matter, the decision of the ALJ, the R & R and controlling legal standards, the Court finds the Administrative Law Judge appropriately weighed the opinions of Plaintiff's treating physician, an examining physician and two non-

-1-

examining and non-treating physicians in accord with the standards of the Treating Physician Rule, 20 C.F.R. § 404.1527, and there is substantial evidence in the record to support the decision of the Commissioner that at the relevant time period at issue in this matter the Plaintiff retained the Residual Functional Capacity to perform light work. The Court further finds that the R & R correctly concluded that the newly submitted records were appropriately not included in the record under the standards set forth in the Sixth Sentence of 42 U.S.C. § 405(g).

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1527(b). This includes the duty to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Further, the Commissioner is obligated to "give more weight to a source who has examined the claimant than to the opinion of a source who has not." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh *all* medical opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions

in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)–(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Further, since the Commissioner recognizes that the non-examining expert has "no treating or examining relationship" with the claimant, she pledges to consider their supporting explanations for their opinions and "the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and examining sources." § 404.1527(c)(3).

A claimant may offer new and material evidence to the District Court in support of a motion for remand if certain prerequisites are met. These include: (1) the new evidence is relevant to the time period at issue in the claim; (2) the new evidence is material, meaning that the outcome might reasonably have been different with this additional evidence; (3) there is good cause for failure to submit the evidence when the claim was before the Commissioner; and (4) there must be a general showing of the nature of the new evidence. 42 U.S.C. § 405(g); *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985).

## Factual Background

Plaintiff, who had been working as a hospice nurse, walked off the job on or about March 12, 2012, reportedly because of certain physical and psychological factors, and asserts that event marked the onset of her disability period. Transcript of Record ("Tr.") 17. She applied for DIB, which carried a last insured date of March 31, 2013. *Id.* Thus, the issue presented in this disability claim is whether Plaintiff possessed the residual functional capacity for qualifying work under the Social Security Act during the period beginning on March 12, 2012 and

extending to March 31, 2013.

Plaintiff has been under the care of a psychiatrist, Dr. Philip Steude, since August 2015, and treated Plaintiff during the relevant time period. He evaluated Plaintiff in his office on March 16, 2012, and documented the episode of her walking off the job. At that time he anticipated she would return to work in a matter of weeks, but recognized that her diagnosed depression might be greater than immediately appreciated. Tr. 295. Dr. Steude saw Plaintiff again eleven days later, on March 27, 2012, and noted problems she was experiencing with a boyfriend. *Id.* Dr. Steude documented in a May 21, 2012 office note that Plaintiff's anxiety was "ok" and "back to normal" and her mental status exam was within normal limits. Tr. 301.

Dr. Steude documented in office notes in August 2012, October 2012 and January 2013 difficulties that Plaintiff was having in a relationship with a boyfriend. The record indicated that the patient was experiencing what Dr. Steude described as "paranoia," with references to a "plot" involving the boyfriend and a former girlfriend. Despite these difficulties, Dr. Steude again noted on January 3, 2013, that Plaintiff's mental status exam remained within normal limits. Tr. 301, 306.

Dr. Steude also prepared on January 3, 2013, responses to a questionnaire provided by Plaintiff's counsel that addressed issues related to her mental status. Dr. Steude opined that Plaintiff had "marked" limitations in her social functioning and ability to carry out detailed instructions. He also concluded that Plaintiff had deficiencies in the areas of concentration, persistence or pace and repeated episodes of deterioration or decompensation in the workplace. However, Dr. Steude also assessed her Global Assessment of Functioning ("GAF") score as 60, which reflected only a moderate degree of difficulty in social and occupational functioning. Tr.

302-304. A note from a July 2013 office visit with Dr. Steude documented continuing physical pain and numbness symptoms of Plaintiff. Tr. 307.

Plaintiff underwent a mental status examination conducted by Kimberly K. Kruse, Psy.D., on June 6, 2012. In this single examination, Dr. Kruse noted the Plaintiff's long history of anxiety-related difficulties, but concluded that her mental status examination revealed that she had normal cognitive functioning and was able to communicate effectively. Dr. Kruse diagnosed Plaintiff with anxiety and depression and documented that she had "Cluster C personality traits." Tr. 296–98. Plaintiff's medical records were also reviewed by two non-examining and non-treating psychologists, Edward Waller, Ph.D., and Xanthia Harkness, Ph.D. Both of these psychologists recognized that Plaintiff had certain mental health limitations but concluded she retained the ability to perform simple tasks in a position so long as she was not required to have constant public contact. Tr. 96–97, 120–21.

The Administrative Law Judge ("ALJ") found that Plaintiff had severe impairments under the Social Security Act, which included degenerative disc disease, depression, anxiety. and personality disorder. Tr. 17. The ALJ reviewed the conflicting mental health related evidence in the record and concluded that the record did not support a finding that Plaintiff satisfied the requirements for a mental health Listing under 12.04 (affective disorder) or 12.96 (anxiety disorder). Tr. 19. In reaching that conclusion, the ALJ traced the "Paragraph C" requirements under both Listings and weighed the evidence offered by the various experts. Tr. 17–21. Dr. Steude's opinions were accorded "little weight" by the ALJ because he had assigned Plaintiff a GAF score of 60, indicating only moderate impairments, and his office notes provided "sparse" details to support the opinions stated in the questionnaire. Tr. 21.

Following a final decision of the Commissioner, Plaintiff filed this appeal and subsequently submitted medical records from a October 2, 2013 Lexington Medical Center emergency room visit and a letter from Dr. Steude dated May 11, 2015. The Lexington Medical Center records describe a markedly worse situation than any previously described in the record, in which Plaintiff had been involuntarily detained after she was found by her daughter "carry around guns and stating that people are after her . . . ." (Dkt. No. 8-2 at 5). The record notes that "[t]he bizarre behavior started this week." Dr. Steude informed the emergency room physician that "she has been stable . . ." prior to the onset of these symptoms. (*Id.* at 4).

Dr. Steude's new note, of May 11, 2015, made reference to the Plaintiff's status when he last saw her on April 7, 2015. He described her as having difficulty with activities of daily living, such as not showering for three to four days at a time. (Dkt. No. 8-3). This note described a level of personal dysfunction not previously documented in Dr. Steude's medical records.[1]

## Legal Analysis

Plaintiff objects to the failure to accord the opinions of Dr. Steude, expressed in responses to a January 3, 2013, questionnaire, controlling weight. Although the Treating Physician Rule provides a degree of deference to the opinions of a treating physician, particularly a specialist with a long treatment history, such as Dr. Steude, it does not follow that such opinions must be accepted by the Commissioner without qualification. Among the factors to consider is the supportability of the treating physician's opinions in his records and in other

---

[1] Dr. Kruse's evaluation of June 6, 2013 noted that "she has no difficulty with shopping, laundry, or maintaining her own hygiene." Tr. 297.

available records. § 404.1527(c)(3).

A review of Dr. Steude's records seemingly raises more questions than they answer. He notes the patient has paranoia but her mental status exam is within normal limits. Further, he records a GAF score of 60, suggesting real but moderate impairments, and provides responses to a questionnaire that finds marked impairments. Tr. 301, 302–04, 306. The report of the examining, non-treating physician, Dr. Kruse, recognized Plaintiff's anxiety and depression but also found solid communication skills and intact cognitive functioning. Tr. 296–98. Faced with this body of somewhat conflicting expert evidence, the ALJ weighed the opinions in a manner consistent with the Treating Physician Rule and concluded that Plaintiff had a series of severe impairments but nonetheless retained the residual functional capacity to perform light work. Tr. 17–21. The Court finds that there is substantial evidence to support the finding of the Commissioner.

Plaintiff has submitted for the first time evidence related to an October 2013 emergency room visit and a 2015 office visit with Dr. Steude and seeks to have the Court find there is not substantial evidence to support the decision of the Commissioner. Plaintiff is misguided regarding the potential use of late submitted evidence to the District Court. In the event that the Court finds the evidence new and material and satisfies the other standards for inclusion of newly submitted evidence, the Court's sole option is to remand the matter to the agency to consider this newly submitted evidence. 42 U.S.C. § 405(g); *Borders v. Heckler*, 777 F.2d at 955.

There are several practical problems with the newly submitted records. First, the emergency room visit of October 2, 2013, falls outside the last insured date of March 31, 2013, and documents that this "bizarre behavior" had arisen only in the last week. Further, Dr. Steude

was documented in that same record telling the emergency room doctor that prior to this visit Plaintiff's condition had been stable. (Dkt. No. 8-2 at 1, 4, 5). Second, the letter from Dr. Steude of May 2015 makes no suggestion that it relates back to the period of last insured and describes a decline in personal hygiene that was never documented in the previous record. (Dkt. No. 8-3). Third, Plaintiff has offered no explanation why the hospital record was first submitted more than two years after events documented in that record. Under these circumstances, it would not be appropriate to add these late documents to the record and remand the case to the Commissioner.[2]

## Conclusion

Based upon the foregoing, the Court hereby **ADOPTS** the R & R of the Magistrate Judge as the order of the Court and **AFFIRMS** the decision of the Commissioner.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

July 19, 2016
Charleston, South Carolina

---

[2] Nothing in this order should be interpreted as preventing Plaintiff from applying for SSI benefits based upon any changes in Plaintiff's condition which have occurred since March 31, 2013.